2010 BNH 019

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:  Bk. No. 10-11046-MWV
  Chapter 11
Amoskeag Inn Corporation,
 Debtor

*George J. Nader, Esq.*
*RILEY & DEVER, P.C.*
*Attorney for Debtor*

*Jennifer Rood, Esq.*
*BERNSTEIN SHUR*
*Attorney for Debtor*

*James S. LaMontagne, Esq.*
*SHEEHAN, PHINNEY, BASS + GREEN*
*Attorney for Choice Hotels International, Inc.*

*Ann Marie Dirsa, Esq.*
*Attorney for United States Trustee*

## MEMORANDUM OPINION

The Court has before it the emergency motion by Amoskeag Inn Corporation (the "Debtor") for an order compelling Choice Hotels International, Inc. ("Choice"), to comply with the terms of a franchise agreement. The Court held a preliminary hearing on March 19, 2010, and continued the matter until April 2, 2010. As a result of the March 19 hearing, the Court ordered the Debtor to pay $10,000 to Choice and that Choice activate its reservation and marketing services, which was done that day. The Court held an evidentiary hearing on April 2, 2010, and took the matter under advisement. At that hearing, Mr. Gerry Brown, director of credit of Choice, testified as well as Attorney David Dow, corporate counsel for the Debtor, and Marie Farrell.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## FACTS

Most of the facts are not in dispute.  The parties entered into a franchise agreement in May or June of 2007.  As a result of that agreement, significant improvements were made to the hotel operated by the Debtor and the subject of the franchise agreement.  For various reasons, including the economy, the Debtor subsequently ran into financial problems.  On January 5, 2010, Choice sent to the Debtor a notice of default for failure to pay fees and other charges of $18,381.09 and failure to pay travel agent commission fees of $3,558.59.  The letter indicated that the amounts were to be paid within ten days of the date of the letter, January 5, 2010, and if not paid, Choice may terminate the franchise agreement.  It also said that Choice will discontinue reservation and marketing services until the defaults were cured.  Mr. Brown testified that he hadn't heard from the Debtor, but somebody in his office may have, and that the reservation and marketing services were suspended on January 25, 2010.  He further testified that he talked to Attorney Dow on January 25, 2010, and agreed to a payment plan of an immediate payment of $5,000 plus $2,500 per week commencing February 5, 2010, and payable every Friday until paid in full.  Dow's version of the agreement was that there was to be an immediate payment of $5,000, but then additional payments—not weekly, but as they could be made by the Debtor provided the amount owed didn't increase.  The agreement was never reduced to writing.

Payment of $5,000 was wired by the Debtor to Choice on February 1, 2010.  On February 4, 2010, reservation and marketing services were restored.  On February 16, 2010, a payment was made of $2,500 and, on March 2, 2010, a payment was made of $3,867.49, the amount of the travel agent commissions.  On March 3, 2010, Choice sent to the Debtor a letter of termination.  (Debtor's Ex. 2.)

This letter refers to Choice's letter of January 5, 2010, and specifically to section 10(b)(1)(a) of the franchise agreement.

> b. <u>Termination by Us</u>.
>
> 1. <u>Termination with Notice</u>. If you default in your material obligations under this Agreement, we may terminate this Agreement, effective on the date stated in our notice (or the earliest date permitted by applicable law) as follows:
>
> (a) <u>Non-Payment of Fees</u>. If you do not pay us the Monthly Fees or other fees and amounts due under this Agreement (including travel agent commissions and global distribution system fees) or file required monthly reports of Gross Room Revenues, within 10 days of our written notice of default to you[.]

Franchise Agreement, § 10(b)(1)(a).

At the original hearing on March 19, 2010, counsel for Choice raised the issue that the Debtor had defaulted twice within one year, which was an additional cause for default. At the hearing on April 2, 2010, Choice put into evidence its letter of default dated July 9, 2009. (Choice Ex. 101.)

## DISCUSSION

At the preliminary hearing and again at the evidentiary hearing, Choice argued that the agreement was terminated under section 10(b)(2)(h) entitled "Multiple Defaults." That section reads as follows:

> 2. <u>Immediate Termination Effective on Notice</u>. Upon written notice to you, we may terminate this Agreement immediately, without giving you an opportunity to cure the default, if:
>
> . . . .
>
> (h) <u>Multiple Defaults</u>. We send you 2 or more written notices of default under this Agreement for the same or a similar cause or reason in any consecutive 12 month period during the Term, whether or not cured[.]

Franchise Agreement, §10(b)(2)(h). As indicated above, Choice introduced into evidence its letter dated July 9, 2009, entitled "Notice of Default" and argued that this letter plus the January 5, 2010, letter were multiple defaults and that the agreement was terminated. The Debtor argues that there was no proof of receipt of the letter of July 9, 2009. Two facts point to receipt by the Debtor. First, it was sent by

certified mail. Second, and maybe more importantly, it was uncontested that shortly after the letter was sent, payment was made by the Debtor of the amounts referred to in the letter of default.

The Court disagrees that the franchise agreement was terminated under this section. While termination under the above section may be immediate without a cure period, it still required notice of the termination. The January 5, 2010, letter specifically referred to section 10(b)(1), not 10(b)(2). Thus, no notice of termination for multiple defaults was given prior to the filing of the Chapter 11 petition.

This leaves the Court with the determination as to whether there existed grounds for termination under the March 3, 2010, notice of termination which was sent by Choice to the Debtor. While most facts are not disputed, the terms of the agreement between Attorney Dow and Mr. Brown are in dispute. The agreement was not reduced to writing. Both witnesses were credible. Dow testified that the agreement was that the Debtor would make an immediate $5,000 payment and subsequent payments as the Debtor could afford them so long as the amount did not increase. In return, the reservation and marketing services were to be reinstated.

Brown testified that the agreement was that the Debtor would make an immediate $5,000 payment and then payments of $2,500 per week on Fridays until the amount owed had been paid. He further testified that the default was never waived by Choice.

There is no dispute that the reservation and marketing services were reinstated on February 4, 2010. The Debtor argues that this action by Choice is evidence that the default had been cured, and a further notice of termination under section 10(a) or (b) was required before actual termination would occur.

There is support for this position in both the January 5, 2010, notice of default and section 10(c) of the franchise agreement. The January 5 letter stated that if all amounts were not paid within ten days of the date of the letter, Choice will discontinue reservation and marketing services until <u>the defaults are cured</u>. Section 10(c) of the franchise agreement states that Choice would reinstate the suspended services "if you cure your default before this Agreement terminates." (Franchise Agreement, §10(c).)

The Court believes that the Debtor was justified in believing that it had an agreement that cured the defaults when the services were reinstated. This then would require a new notice of default prior to effective termination.

Thus, the Court finds that the franchise agreement had not been terminated prior to the filing of the Chapter 11 petition by the Debtor, and the reservation and marketing services must continue until effective termination under the terms of the franchise agreement or further order of this Court.

## CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

DATED this 22nd day of April, 2010, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge